Good afternoon, Your Honors. For good and practical reasons, the Supreme Court recently told Admiralty practitioners and other courts in Norfolk Southern Railway v. Kirby that only one body of law should apply to a maritime transaction, including a bill of lading. Bills of lading are to be interpreted according to one body of law. In our case, however, APL claimed the benefit of the United States Carriage of Goods by Sea Act and then was permitted to use Singapore law to claim attorney's fees as the prevailing party in our litigation. However, once APL obtained attorney's fees, and this is something not only the United States Carriage of Goods, but the United States Carriage of Goods itself, or under the American rule of damages, it asked the court below to improve Singapore law by basically applying American legal principles of governing reasonability and ignoring Singapore's own standards, which are much narrower and which grant much reduced attorney's fees. The court below ---- They have a blanket amount. Pardon? They have a blanket amount. There's a ceiling on the fees. Yeah. Well, they have. There's several issues that are involved here. One, as we pointed out in our brief, if you win on the summary judgment motion as here, you're limited to 15,000. Equally importantly, however, it's stated that only two attorneys can be assessed, to have their fees assessed for the purpose of attorney's fees. There were seven timekeepers. Is there any exception for that, counsel? Pardon? Is there any exception for that? Not that I recall. No extraordinary circumstances? Oh, yes. If you ask, if you petition to the court and thus also allow your opposing counsel to disagree or rebut it, yes, there is an exception for that. In extraordinary circumstances, extremely complex and difficult cases. But you must petition and give the other side a chance to say, hey, no. The court below recognized that there were distinct parameters that would have limited the court's right to grant larger attorney's fees, but described these as being unimportant and picayune. I'm not sure whether the Singapore Court would agree. However, the APL argues that these matters are only matters of procedure. Well, under admiralty law and under Supreme Court precedent, this Court's own opinion in Exxon Valdez and the Claxton v. Stenter case out of the U.S. Supreme Court, the measure of damages, including things like prejudgment interest and attorney's fees, is substantive. It's not procedural. It is the substantive law. As a matter of law, when you take the law of a foreign country, you generally apply the whole law. But you certainly apply the substantive law. And these particular provisions are substantive. One thing to understand is that under the English rule, as Judge Tsang pointed out in his affidavit in this case, which was the, I think, the only affidavit in the English affidavit, these are meant to be compensatory. Ergo, they are not just mere costs. They are part of the damages. And there's a case called Sumportex v. Philadelphia, Truingham Corporation at the Third Circuit, which does exactly the same thing. APL also challenges our right to appear here today on the basis that we have no standing Now, this was rejected by the court below, and it's not issue is not on appeal. But they argue that standing is something that can always be decided by this court. The problem for this, however, is that CamDar, one of the defendants and appellants here, is a dissolved corporation. Under California law, it has every right to litigate. And more pertinently, Valley Forge Insurance Company never intervened for CamDar. CamDar has an absolute right to proceed with this, no matter what else happens with co-defendant Ujico. More importantly, Ujico has an absolute right to be here because it has, under California law, the right to – well, first of all, Valley Forge must, according to California precedent, Kaufman and Broad, Reliance, and Western Heritage, must – when you're defending a party, even if there's a reservation of rights, you must appear and intervene in order to protect the interests not only of yourself, but also of the insured. And the key issue is that the cases that were cited by APL basically saying why there's no right to intervene on the basis that if you – there's only a contingent liability at stake for the insurer come out of the First and Sixth Circuit. And several years later, the First Circuit, in foundation of New England v. Mosby, Bakker, 966 F. 2nd 39, stated that, you know, there's two groups, the circuits are divided into two groups, one that construes things liberally as far as intervention and one that doesn't. At that time, the First and Fifth Circuits were in the we don't construe the intervention rights on a liberal basis. This Court, on the other hand, in U.S. v. City of Los Angeles and many other cases, has held that district courts, when making intervention decisions, should be guided primarily by practical and equitable concerns, should interpret the requirements for intervention broadly in favor of proposed interveners. This circuit has a liberal policy in favor of intervention. By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation. Valley Forge has really a definite interest here. It is obliged by California law to intervene in this matter. And although APL. Robertson, I'm not sure you're obliged. Pardon? You're permitted under California law.  I'm not sure you're obliged. Excuse me, Your Honor. Under the Kaufman and Broad case, it says you must intervene to protect the insurer's interests. It's cited in our brief, but no, you must intervene. It says it twice. And it's an abuse of discretion not to allow intervention. An important thing to recognize is that although this is an admiralty case and an admiralty insurance policy, what we have here is the case called, the Supreme Court case called Wilburn Boat that has confused and bothered lots of people. And essentially, Wilburn Boat says you have to apply California State law to the insurance relationship between the insurer and the insured. And this Court in a number of cases, including Bank of San Pedro and Aquamarine, has said when the State sets up requirements. But, you know, the intervention really isn't at issue here. Pardon? There's no cross-appeal intervention. The question is standing. And the tests are somewhat different. So why don't you address standing? Even when we have cases where we've allowed intervention, the question may arise again on standing on appeal. So, you know, there are cases that deal with intervention, not standing, but you still have to argue standing here. Well, with standing, you have to have, you know, you have to have a dog and a hunt, essentially. You have to have something at stake here. Here you have an insurer that, because of the direct action statute in California against liability insurers, that if this case had been defaulted, they would have automatically been on the hook, automatically on the hook for the damages. An important thing to realize, they had already lost their coverage dispute. They had already found, been found, both by the court below and this Court, to owe coverage to the suspended and dissolved insurers. So they were going to be stuck no matter what happens. They had a distinct financial risk that they were going to be facing, and it was unavoidable. You're down to about 45 seconds. Okay. I'll stop right now. Thank you. Good afternoon, Your Honors. Brian Blackman on behalf of the appellee, APL, in this matter. I'd like to pick up where my colleague left off, which is on this question of standing. And as he's pointed out, this is an admiralty, a Federal admiralty action. And under Valley Forge intervened under Rule 24a, which means that they, under Federal law, must establish a significant interest in order to have standing to proceed. Federal case law holds that a significant by reserving their rights to deny coverage, their interest was only contingent. You did not cross-appeal the district court's order granting intervention. Correct? That's correct, Your Honor. So what consequence is that? We don't believe it's of any consequence, Your Honor, as we believe we can raise the issue of standing before this Court. Yes. But on the other hand, I think when you talk about a significantly protectable interest versus a standing interest on appeal, they may be somewhat different concepts. All of your cases talk about the right to intervene. Do you have any cases that talk about standing on appeal in circumstances like this? No, Your Honor. Okay. Go ahead. With that, Your Honor, I'd like to move to the larger issue, which was the application of the district court's application of Singapore law in granting APL's fee request. Before you get to that, one concern that counsel didn't address that I have is the district court's in-camera review of the attorney records without a finding of privilege and without the other side being able to look at them. It strikes me, and of course, there's case law that indicates that they ought to be able to examine the records. They were kind of at a loss to object without having to be able to review the heavily redacted records. And it's tough for me on appeal to determine whether the district court was right or not, because there's no assertion of privilege or ruling on privilege. So would you respond to that? We asserted privilege, Your Honor, when we submitted the initial records into the district court for determination of the fee motion. In doing so, the court came back and told us that they wanted the full redacted what they wanted us to do was to submit redacted records, which we did. The redacted records allowed counsel to review what was being done. If you look at the records, you'll see that what has been redacted out is the subject matter of the communication. So if the entry says it's a communication between ourselves and client, the entry still lists that it's a communication, but what's been redacted out was the content of that communication. So tell me, why didn't the district court rule on your privilege request if you made it? I mean, I just don't have a finding on privilege that I can review with respect to all these records. We submit, Your Honor, that the court's ruling in granting the fee motion is a determination subject to their objection the first time around. So when we submitted the redacted billing records, counsel was given an opportunity to review them and to point out its, to make its opposition to those statements. The court considered those oppositions, those statements. The court then also considered the unredacted portions, and then she made her ruling. And her ruling essentially was that I find that all of the time entries are predominantly applicable, but under the Singapore law, which we'll get to, I'm issuing an across-the-board 15 percent cut. Now ---- So if you're applying some of the ---- for example, they make some objections based on Singapore law and the number of attorneys involved and so forth. How can they assess their objection without having some ability to look at the unredacted records or portions of them? Your Honor, the case was still in contention. I mean, there was still a dispute between the parties at the time, and there continues to be. Valley Forge is the, essentially the party here on appeal today. Valley Forge has an ongoing coverage action, and at that time we had an ongoing coverage action. And the court considered that and pointed out the fact that these billing statements can contain privileged communications that will give them insight into our litigation strategy, what we're considering as to both cases. The evidence in the record demonstrates that these billing, the billing statements we submitted contained entries for both cases. And as a result, that creates competing interests that the court had to balance. The competing interest being ---- Why are you entitled to recover on coverage issues as opposed to ---- you've got two cases in there. Tell me why you're entitled to recover on legal work you do in the separate case. I didn't mean to suggest to the court that we were entitled to recover in the coverage action. My point was that we had submitted billing statements to the district court that covered both cases, and as a result, those entries should be redacted. But also, what we were doing needed to be redacted, because APL has a right to preserve its attorney-client communications. This Court has recognized in Clark that billing statements can include and disclose attorney-client communications. But isn't the district court at least obligated to make some findings so that we can review things? I mean, we ---- not only is the other side being asked to take it on faith, but we are, too. The district court, based on its ruling on the fee motion, it's our position the district court ruled that they felt that all of our redactions were privileged. Well, I don't see a ruling. It may be by implication, but I don't ---- There's ---- It just granted the motion. Well, I think you should get on to your Singapore arguments, too, because my question has taken some of your time. Certainly, Your Honor. I'm happy to move on to that issue. The substantive law of Singapore basically says, and is laid out by Judge Seng, is an issue of reasonability. Although there are procedural rules as to how that is submitted to the Court and what the Court may or may not consider, those are procedural rules in our opinion. What is substantive is the fact that, as my colleague points out, these are compensation, and as compensation, the Court is ---- That's a pretty high level of abstraction. If Singapore caps it at $15,000, it's hard to say, well, that's ---- Singapore thinks that $15,000 is reasonable, so that's all we have to find, so we can award a million dollars in fees if we think it's reasonable. That's a pretty high level of abstraction, counsel. Well, to that point, Your Honor, there are a couple of different points that apply to the cap. The first point is that under the specific rules and as attested to by Judge Seng, the cap doesn't necessarily apply. The judge, the district judge in Singapore has discretion not to apply the cap. The other point is that if you look at the actual rule itself, part one says that the cap does not apply in circumstances where the judgment is assessed damages. This case, APL was assessed $700,000 in damages. That means under Singapore law, the cap is not applicable. So it's not an extension of the Court's, the reasonability of the district judge's assessment. The cap just simply doesn't apply. The reasonability goes to the question of whether or not multiple attorneys were required. It goes to whether or not the case was complex and difficult. All of the concepts that Singapore law addresses, because Singapore law says the same thing that our law says, it says the same thing that our law says. And was any of that addressed by the district court? It was, Your Honor. The district court did not address the cap issue. What the district court addressed was the fact that they were, the decision was being made. The district court said we're not going to apply those PICU rules. That's what the district court said, right? I'm not going to apply the Singapore PICU rules. Procedural rules. I think she used the word PICU. Did she not? She did. Yeah. She did. And so what do we make of that? I mean, you're arguing the rules, and she's saying I'm, I didn't follow the rules anyway. No. What I'm arguing is that the district court followed the substantive law of Singapore and that the procedural rules are different from the substantive laws of Singapore treats the attorneys' fees very similar to the way we do here. It's a question of reasonableness. Judge Tseng, Valley Forge's expert, actually says this is a question of reasonableness that's left to the discretion of the district judge. That's exactly the way we apply it. And in Singapore, that discretion is exercised under the concepts similar to what we consider. Was the case complex? Was it difficult? Was it addressing novel issues? Was it heavily litigated? All of those issues are assessed similarly under the Lodestar concept, which the district court used. Now, the district court did borrow from the Lodestar concept, but the Lodestar concept here is found to be presumed to be a reasonable assessment. So under substantive Singapore law, the question is, was the judge's assessment reasonable? She applied the standard basis, which is the typical basis under Singapore law for, of course, discretionary assessment of attorneys' fees. Under the standard basis, it has to be reasonable. You get to collect what was reasonable based on the circumstances of the case. That is exactly what the district judge did in this case. She did not apply the standard basis. Roberts. Is it your argument that she erred or not in saying, I'm going to disregard Singapore law, because there are kind of two arguments. One is you're saying it doesn't matter because they're the same, which I understand that's the argument you're making now. Is your argument also that she was correct in disregarding Singapore law requirements entirely? It's our position that she was correct in disregarding the procedural rules. We proceeded to the District Court of the United States, which has different procedural requirements than the courts in Singapore. You have different case management requirements. You have different motion practices. You have to follow the procedures of that court. We did so, and in doing so, we were required to use multiple attorneys, which was more efficient, necessarily, than having, say, a single attorney at the highest price address all of the issues. There's a senior and junior issue in Singapore. How did she deal with that? Senior, junior, as to the counsel. The attorneys, yes. And the senior gets a lot more money than the junior. But there's always two lawyers in Singapore before the high court. How did she deal with that issue? She dealt with that issue by cutting the fee, by cutting the rates of all of the attorneys involved. She gave the highest rate to the most senior attorney, and then she gave the lower rates to everyone below it. She cut the fees? She cut the rates and she cut the time. Oh. That's the highest paid attorneys in the world are in Singapore. How did she do the cutting? On what basis? She essentially assessed the lowest rate. Because the case had progressed over a series of years, all of the attorneys' rates had varied during that time. She assessed the low end of all the scales for each level of attorney, excuse me, based on their experience. Any further questions? Did you – there was no one who appeared and testified as to what the fee would have been in Singapore? There were not as to the actual fee, Your Honor. There were expert declarations submitted on behalf of both the judge and practicing practitioners from Singapore as to what the substantive law was, but nobody testified as to the actual amount. Okay. All right. Thanks for your argument. Thank you. Rebuttal? Well, just I'm going to reiterate, one, there was never an assertion of privilege that we ever saw. And, two, there was never any rulings on privilege. Essentially, we were sandbagged by the ruling. We knew it was in camera, but in the memo or in the court's order just before it, she commented that the records that we had seen were inadequate and that we had to have a jury. And so we had a chance to challenge them. Furthermore, in camera, hearings are usually only meant to find out what is or is not privilege under the authority of this Court. That's what we expected to happen. With regard to reasonability, yes, sir. I don't see where that leads you. The reason you don't get to see it is for other reasons, and then the judge then makes necessary modifications in the process to make up for your failure to be able to see with your own eyes. Except under the authority of this Court in the four cases that we cited, we still the judge had the obligation to separate out those time entries that were privileged and then give us whatever was left with an explanation as to why privilege existed So we would have a chance to have a reasoned ability to challenge individual time entries. You never got the redacted bills? Never. We received... Did the district judge let you know whether or not anything that was redacted had anything to do with your fee, with the fee payment? Nothing. Nothing. There was never any communication. All of a sudden, we have a September 2010 order saying, okay, we're going to award attorney's fees at these rates, but gosh, the records that you've given us are really terrible and I can't figure out, you know, what's good or not good because they're heavily redacted. And it says that the opponents have no ability to reasonably determine that. Those are the only records we ever saw. You filed your notice of appeal about two weeks, I think, after the district court issued her order. Did you go back to the district court and say, hey, this isn't fair, you've got to give us a shot before you do this? No, we didn't. There was... This was a difficult litigation with the district court. I didn't handle most of it, but I came into it late and I was surprised by some parts of it. And I think we just wanted to get our appeal out as fast as we could. Though we had... I think we had a lot of evidence that we did which said we have to have a chance under the Ninth Circuit authorities to look at these. I mean, that's basic due process. I mean, I cannot... I understand. But when she didn't do it, you decided to get out of Dodge. But ordinarily, we require some movement on your part to raise it to the district judge, saying specifically, based upon the materials you got that were redacted, what more information you need. I take it that objection was not made. Only to the extent that after the September 2010 order, which said that the court wanted the redacted, wanted unredacted things, we said we still want to see. I've got a chronology over here where all of the time we said we want to see the records. I think the point is after you got the redacted information and knew in your own mind that you needed more that was redacted, that wasn't brought back to the district judge. Oh, yes, it was. In what way? There were two... We had been told... No, not what you've been told. No, no, no. We requested in both March of 2010 and on an early September of 2010, we asked for the ability, and I can get you, it's in our brief. Right. She rules in what, 2011, January of 2011? Yes. Okay. So you didn't do anything after January 2011? Other than file the appeal. And that's... Right. So your argument is you're relying on your earlier objection, which didn't address the fact that she had taken this material in camera and made decisions based on her review rather than allowing you to look at it. Well, Your Honor, I will only... Did you object to the in-camera proceeding? We told... Well, before we were told it was going to be in camera, we had filed at least three oppositions saying that we needed to know everything. No, no question about that. No, I know. I understand that. I understand that. And I'm just saying that... You objected in camera, and did you object to what happened in camera? We were, I think, I think possibly we should have objected at that point, but what we did  see was that we had received individual entries and that the redacted, that we would see the time and billing records. We just assumed we were going to get them. Well, you did get them. They were just redacted. We didn't. No, we never got the second set. You never got anything. No, we never received any records that were not heavily, heavily redacted. But that isn't the question, I ask. You did receive something. Back before... Did you object to that something? Yes. Yes, we did. We objected to those on the grounds that we couldn't tell what it said and we had no reasonable means, no meaningful way of rebutting something. And, I mean, let's, the issue of whether the coverage issues were covered in those particular entries is interesting because... Well, you're getting... Basically, research, these redacted entries said eight hours research on blank, hundreds of those. We have no idea what was being covered. But we did. We did object repeatedly to the fact that the redacted records were insufficient for us. Okay. I think we have your argument at hand. Any further questions? Thank you very much. The case just heard will be submitted for decision and we'll proceed to argument on the case of APL v. Valley Forge. Mr. Barron? Good afternoon, Your Honor. Good afternoon, Your Honor.
judges: Wallace, Thomas, Bybee